Owen McGovern, J.
Petitioner landlord brings this proceeding to review an alleged arbitrary determination by the State Bent Administrator, relative to petitioner’s application for an increase in rent pursuant to section 4 (subd. 4, par. [a], cl. [1]) of the State Residential Rent Law (L. 1946, ch. 274, as amd.).
Request was made for a net annual return of 6% based on the value of property which petitioner asserted was a bona fide sale price paid by petitioner in 1956. A year after this date, petitioner made this application which was denied on November 15, 1957. Protest was then filed, and on March 5, 1958 an order was made denying the protest.
The property was purchased for $203,700. Cash of $30,000 (15%) was paid on the closing. The further sum of $3,700 was paid by the purchaser to the individuals on the contract who sold the contract to the purchaser. The purchase was subject to a first mortgage of $100,000, bearing an interest rate of 5%, held by a savings bank, which mortgage was extended (at the time of the purchase) for 10 years. In addition, there was a purchase-money second mortgage of $70,000, due in 10 years, with interest at 4%% for the first 6 years and 5% the next 4 years, requiring no amortization for the first 3 years, although the first mortgage called for amortization quarterly from inception, beginning the date of sale and extension.
The Administrator in denying the protest said that, upon the evidence, the bulk of the purchase price was for the land rather than the building and that the price paid was predominantly for its future or potential value and not for its present value.
It is conceded the 1957 amendment (L. 1957, ch. 755) makes it mandatory for the Administrator to use the most recent bona fide sale price rather than the assessed valuation. However, the rent act and the State Rent and Eviction Regulation (§ 33, subd. 5) specifically require that the sale be on normal financing terms and unaffected by “ special circumstances ”.
The commissioner concedes that were the 15% cash payment the only indication of abnormal financing, he would in all probability have utilized the sale price as the valuation base. However, he asserts that the 15% cash payment, coupled with the high purchase-money second mortgage (it being 70% of the first *145 mortgage), and the fact that interest on the second mortgage was less than on the first mortgage, and also the fact that no amortization payments are provided for the first three years, justify him in holding that these circumstances are evidence of abnormal financing which justify his ruling.
No expert testimony or other proof is offered that the sale was not on normal financing terms. But the petitioner offered proof by a competent real estate appraiser that the terms of the sale were normal. And indeed it is difficult to appreciate any abnormality in a transaction where a savings bank extends a first mortgage of $100,000. If there does exist any deviation from 1 ‘ normal financing ’ ’ in the facts relating to the relative amounts of the mortgages and of the interest payable thereon, such deviation is so minimal that refusal to consider the sale price is arbitrary. There is no evidence that the financing factors involved are not good and normal real estate practice or that speculation was a factor in the deal.
The court, therefore, concludes that in refusing to accept the sales price as the basis for valuation the Administrator acted arbitrarily, unreasonably and illegally. The motion is granted and the proceeding remanded to respondent for action not inconsistent with the foregoing.
Settle order.