In the Matter of OSVALDO J. PRINCIPE, as Chairman of the Tenants' Committee on Behalf of Himself and the Tenants of 790 Riverside Drive, New York City, Petitioner, *v.* ROBERT E. HERMAN, as State Rent Administrator, Respondent.

Supreme Court, Special Term, New York County, February 26, 1962.

*Hyman W. Sobell* for petitioner. *Harold Zucker* (*Robert Sugarman* of counsel), for respondent. *Diamond & Kreitman* for landlord-intervenor.

ABRAHAM J. GELLINOFF, J. In this article 78 proceeding, petitioner seeks to annul a determination of the State Rent Administrator denying petitioner's protest with respect to a rent increase granted the landlord under the 6% annual return formula (State Rent and Eviction Regulations, § 33).

The building involved, 790 Riverside Drive in the Borough of Manhattan, is a 12-story apartment house containing 202 dwelling units. The landlord purchased it on November 4, 1959 for $1,440,000, with $260,000 cash and the balance by taking title subject to a first mortgage of $565,584.67 and a second mortgage of $614,415.33.

In June, 1960, the landlord filed an application for an increase in the maximum rents on the ground that this property did not yield a net annual return of 6% of its valuation. The valuation base claimed was the purchase price of $1,440,000.

Subdivision 5 of section 33 of the State Rent and Eviction Regulations provides that the valuation to be used is the assessed valuation of the property unless there has been a bona fide sale of the property since March 15, 1953, " as a result of a transaction at arms' length, on normal financing terms, at a readily ascertainable price unaffected by special circumstances such as a forced sale, exchange of property, package deal, wash sale, or sale to a cooperative ", in which event the sales price is to be used.

The Local Rent Administrator caused an accounting audit to be made of the books and records and found the landlord's total income from the property to be $250,821.54; total expenses for the test year ending October 31, 1959, $186,717.52; net rent earned in the test year, $64,104.02. Based upon the purchase price of $1,440,000 the allowable net return of 6% amounts to $86,400, which indicated that a rent adjustment of $22,295.98 or 8.96% of the rental income was required in order to provide the landlord with the allowable net annual return. The Local Rent Administrator issued orders increasing the maximum rents, effective November 5, 1960, and the tenants protested against these orders.

The respondent Rent Administrator, before sustaining the Local Rent Administrator, re-examined the various factors surrounding the purchase of the property in order to determine whether the sale was on normal financing terms. Such re-examination disclosed that the cash payment on the purchase is the equivalent of 18% of the purchase price; that the cash payment was slightly more than the annual gross income from the property; that the total of the mortgages is less than the 1960-61 assessed valuation of the property; that prior rent increases on this property amount to 24.06%; that the purchase price is less than six times the present annual gross income of the property, which is not abnormal; but that a provision in the second mortgage provided for deferred amortization for four years.

There was no requirement that respondent consider the deferred amortization of the second mortgage separate from all the other factors above enumerated. Besides, the second mortgage was not a purchase-money mortgage given by this landlord to its grantor as part payment of the purchase price; it was placed on the property by a prior grantor before landlord's purchase.

The fact that the second mortgage, with a low rate of interest, did not require any amortization for the first four years does not, in itself, indicate deviation from normal financing. The respondent found, when considering this factor, that the sales price was not affected by the terms of the second mortgage. A contrary finding under the circumstances would have been arbitrary and unreasonable (*Matter of Lese* v. *Temporary State Housing Rent Comm.*, 15 Misc 2d 143).

There is nothing in the record to show that the sale to the landlord was not a transaction at arm's length. The fact that the landlord took title from a seller who himself took title from an assignee of the contract to purchase, raises no inference that any fraud, unfairness, or lack of *bona fides* is involved. The statute mandates the use of the sales price where there was a bona fide sale as a result of an arm's length transaction, on normal financing terms, at a readily ascertainable price and unaffected by special circumstances (*Matter of Realty Agency* v. *Weaver*, 7 N Y 2d 249; *Matter of Ackerman* v. *Weaver*, 6 N Y 2d 283, 287).

In this case the application was filed on June 3, 1960, and the Local Rent Administrator issued his orders on May 5, 1961, making them retroactive a period of not more than six months to November 5, 1960. This was in accordance with the then

applicable law (Emergency Housing Rent Law, § 4, subd. 6; L. 1946, ch. 274, as amd. by L. 1957, ch. 755)— prior to the recent amendment of June 30, 1961 — limiting the retroactive effect of an increase or decrease of the maximum rent to a maximum of " six months prior to the date of its issuance " or " as of the date two months subsequent to the date of the filing of such application ", whichever period is shorter.

There is nothing in the record to warrant disturbing the Local Rent Administrator's finding that, as of the date of the issuance of the orders by him, the landlord was in fact maintaining the essential services. That being so, respondent was empowered to grant the increases and to grant them retroactively (*Matter of Halperin* v. *Caputa*, 8 N Y 2d 916; *Matter of Committee of Tenants* v. *Herman*, 21 Misc 2d 684).

The determination of the respondent was neither arbitrary, capricious nor contrary to law (*Matter of First Terrace Gardens* v. *McGoldrick*, 1 N Y 2d 1). Accordingly, the petition is dismissed.